Warner *v.* The State.

No. 14,267.

## WARNER *v.* THE STATE.

CRIMINAL LAW.— *Murder.— Indictment. — Duplicity.* — An indictment for murder which charges an assault as part of the crime, is not bad for duplicity, but charges only a single offence.

SAME.—*Continuance.—Absent Witness.—Testimony as to Insanity.*—An affidavit for a continuance which does not state that the non-expert witnesses, on account of whose absence the continuance is asked, will testify to specific facts indicating the insanity of the defendant at the time of the homicide, but merely that they will testify that he was of unsound mind, is not sufficient.

SAME.—*Testimony of Absent Witnesses as to Threats.*—Nor is an affidavit for a continuance sufficient which merely states that an absent witness will testify that threats were made; the language used must be stated.

SAME.—*Argument to Jury.—Erroneous Inferences.*—Errors of logic or inference in addressing the jury are not available for the reversal of a judgment; and so, where the defendant, in a prosecution for murder, introduces evidence showing that at the time of the homicide he was confined in the penitentiary for twenty-one years, it is not a material error for the prosecuting attorney to tell the jury, in his argument, to consider that fact, and that he has eighteen years yet to serve under the former sentence, and that if sent back to the penitentiary he might kill another man.

SAME.—*Insanity as a Defence.—Instruction.*—It is not error to refuse to instruct the jury that *partial* insanity is a defence in a prosecution for crime. If a defendant is insane within the meaning of the law, he must go acquit, but the weakness or strength of his mental capacity does not affect the question of punishment.

From the Clark Circuit Court.

*W. B. Goodwin,* for appellant.

*L. T. Michener,* Attorney General, *J. H. Gillett* and *G. H. Voigt,* for the State.

ELLIOTT, J.—The charging part of the indictment upon which the appellant was adjudged guilty of murder in the first degree and sentenced to suffer death, reads thus:

" That at said county, on the 15th day of April, 1887, Macy Warner did then and there unlawfully, feloniously,

purposely, and with premeditated malice, assault, and did then and there unlawfully, wilfully, purposely, and with premeditated malice, in a rude, insolent and angry manner, touch, cut, stab, wound and injure Frank Harris, a human being, with a certain dangerous and deadly weapon, to wit, a knife, which he, the said Macy Warner, then and there had and held in his hand, and cut, stabbed at, against and into the said Frank Harris, then and thereby in manner and form as aforesaid, giving him, said Frank Harris, a mortal wound in his neck, of which said mortal wound said Frank Harris then and there died."

This indictment is not bad for duplicity, as counsel assert. An indictment for murder which charges an assault as part of the crime of murder, charges only a single offence; this indictment charges the assault as part of the crime of murder, and, therefore, charges a single offence. An assault is a constituent element of the crime of murder, but is merged in the higher crime in all cases where it is charged as an ingredient of that crime. *Mills* v. *State*, 52 Ind. 187 (194).

The appellant presented to the trial court an affidavit for a continuance, but the affidavit was ruled insufficient, and a continuance refused. We affirm this ruling.

The law prescribes what an affidavit for continuance shall contain, and where the affidavit does not contain what the law requires, it is the plain duty of the courts to adjudge it insufficient. The affidavit before us is insufficient in more particulars than one. It is insufficient because it does not state material facts, but in their place puts conclusions. It asserts that the witnesses named will testify that the appellant was of unsound mind when he killed Frank Harris. This is, indeed, a mere opinion. It is, too, the opinion of a non-expert witness, and to make such an opinion competent it must be based on facts known to the witness and stated by him. These facts make the opinion competent, and give it value according to their weight and importance. It is true that the affidavit asserts that the witnesses will swear that

they knew the appellant, that they saw and conversed with him ; but it does not state that they observed any indications of insanity.  We think it clear that a defendant can not secure a continuance upon an affidavit which, without stating that the witnesses will testify to any specific facts indicating insanity, states that the absent witnesses will testify that the accused was of unsound mind.  The affidavit is probably insufficient because it does not show diligence.  It does not show that the appellant used any means to keep informed of the residence of the witnesses; nor does it show that he issued subpoenas or took other steps in season to discover their absence from the county of Clark.  But, waiving the question of diligence, there are still other defects in the affidavits.  The materiality of the testimony which it is asserted the witnesses would give is not shown.

As to that part of the affidavit which relates to the mental capacity of the accused, what we have said shows the testimony not to be material, for, without the specific facts, the opinion of the witnesses would not only be immaterial, but incompetent.

Without specific facts it is impossible to ascertain what value the proposed testimony would possess, if any, and the facts must be so stated, in such a case as this, that the court can judge of their value.  The law declares that the affidavit shall show " the materiality of the evidence expected to be obtained," and in a case of this kind only a statement of the facts it is proposed to prove can properly show the materiality of the testimony.  *State* v. *Bryant,* 93 Mo. 273.

If the State should be willing to admit evidence of an opinion, merely as an opinion, it could not do so, for, under the provisions of our statute, the prosecutor must admit what is stated in the affidavit to be true, not merely that the witness would testify to it if present.  R. S. 1881, section 1781. It is evident, therefore, that the State should not be required to admit as an incontrovertible fact a mere general statement of an opinion or a conclusion.  In such a case as this, if such

an admission were made, it would force an acquittal, no matter how strong the case made by the State, for the admission of the statement that the accused was of unsound mind would make conviction impossible. This supplies a strong reason for holding that the affidavit must state specific facts, and that mere conclusions will not supply their place.

What we have said proves that it is not sufficient for an applicant for a continuance to state that an absent witness, if present, would testify that threats were made, for it follows from our argument that the language used must be stated, in order that the court may perceive its force and character, and the State be informed of the precise nature of what its prosecutor is called upon to conclusively admit. What the applicant might regard as a threat the court might look upon very differently, and, to enable the court to judge, the specific facts must be before it.

It has long been the rule that the court will not reverse a judgment upon a ruling denying a continuance, unless there has been an abuse of discretion. *Detro* v. *State*, 4 Ind. 200 ; *Wassels* v. *State*, 26 Ind. 30 ; *Pratt* v. *State*, 56 Ind. 179. It is clear that there was no abuse of discretion in this instance.

The appellant introduced testimony showing that he was confined in the State prison for twenty-one years, at the time the homicide was committed, so that the subject was by him brought before the jury in the evidence. In the course of his address the prosecuting attorney said : " In fixing his punishment, consider that he is already in prison under a sentence of twenty-one years, about eighteen years of which he has to serve, and if you send him back to the penitentiary he may kill another man." In stating the fact to the jury the prosecutor did not go outside of the evidence, and if he erred at all, it was in making a wrong inference from the facts established by the evidence introduced by the appellant. If he was wrong in his inference, it is a matter which courts can not correct, for courts can not correct errors of logic or inference. In view of the evidence in this case, and in view

of the fact that if there was error on the part of the prosecutor, it was not in stating fact, but, at most, was merely an error in inferring and predicting what might happen in the future, we can not, under our well established rule, declare that there was such error as will authorize a judgment of reversal. *Combs* v. *State*, 75 Ind. 215; *Morrison* v. *State*, 76 Ind. 335; *Proctor* v. *DeCamp*, 83 Ind. 559; *Epps* v. *State*, 102 Ind. 539, and cases cited; *Anderson* v. *State*, 104 Ind. 467; *Shular* v. *State*, 105 Ind. 289; *Boyle* v. *State*, 105 Ind. 469, and cases cited; *Norton* v. *State*, 106 Ind. 163; *Heyl* v. *State*, 109 Ind. 589; *Coleman* v. *State*, 111 Ind. 563.

The twenty-ninth instruction reads as follows: "In case the jury find the defendant guilty, the degree of punishment to be meted out to him is entirely in the discretion of the jury, within the bounds prescribed by law. The court has no right to do so, and would not dare to intimate to the jury what they should do in that respect, for that is a matter for the jury alone, and the advice offered by counsel on either side as to what the jury should or should not do in that respect, may be considered or disregarded, just as they see proper. Upon you, and you alone, gentlemen, rests the responsibility, and you will no doubt perform your duty in a manner satisfactory to your own consciences, and consistent with the oath which you have taken, and regardless of what others may think or say; and when you have done that, no man has a right to call your action in question." It is possible that this instruction may not be free from verbal criticism, but there is no substantial error in its statements. It declares what, under our statute, is true, that the right, the duty and the responsibility of fixing the punishment for crime rest on the jury, and that, in fixing it, they must be guided by their consciences and be true to their oaths as jurors. *Stout* v. *State*, 90 Ind. 1.

As we understand counsel, the instruction upon the subject of self-defence is conceded to be correct as far it goes, but it is asserted to be erroneous because it does not go far

enough.   We are not informed in what particular the instruction falls short of stating the law upon the subject, and we discern no fault in it in this respect, nor, indeed, in any other particular.   But if it were conceded that the instruction does not go far enough, we could not reverse the judgment, for it has again and again been decided that if an instruction is correct as far as it goes, a judgment will not be reversed.   If a party desires a full and detailed instruction, he must ask it.   *Rauck* v. *State*, 110 Ind. 384.

The nineteenth instruction given by the court reads thus: "The term insanity, under the statutes of this State, includes. every species of organic mental derangement, whether of a mild or violent form, and excludes every other condition of mind; and it follows that in our State, as regards their mental condition in those respects, we have but two classes of people, the sane and the insane.   Actual insanity is consequently with us a defence, and not a mitigating circumstance, in a prosecution for crime."   As applied to the facts of this case, this instruction was more favorable to the appellant than the law authorizes; at all events, as it was given, there is nothing in it of which he can justly complain.   *Robinson* v. *State*, 113 Ind. 510; *Wartena* v. *State*, 105 Ind. 445; *Goodwin* v. *State*, 96 Ind. 550, and cases cited p. 576; *Sawyer* v. *State*, 35 Ind. 80; *Guiteau's Case*, 10 Fed. Rep. 161, n.; *United States* v. *Ridgeway*, 31 Fed. Rep. 144; *People* v. *Kerrigan*, 14 Pacific Rep. 849; *Parsons* v. *State*, 2 South. Rep. 854; *State* v. *Mowry*, 15 Pacific Rep. 282; *Leache* v. *State*, 3 S. W. Rep. 539; *State* v. *Hockett*, 30 N. W. Rep. 742; Buswell Insanity, section 437; Lawson Insanity as a Defence to Crime, 4, 16, 18, 26, 54, 144, 189.

This instruction, as drawn and presented to the trial court, contained, after the words " actual insanity," and before the words " is consequently with us a defence," these words: " however partial it may be."   These words were struck out by the court, and the instruction given as we have set it out. Counsel, in support of their contention that the court erred

Warner *v.* The State.

in modifying the instruction, adduce no argument, nor any authority except the case of *Sage* v. *State,* 91 Ind. 141. That case is not in point. There the position of the appellant's counsel was, that there might be insanity sufficient to mitigate the punishment for a crime although not sufficient to constitute a defence; but the court decided that the position was not tenable, holding that where there was legal mental incapacity it was a complete defence, and that it did not merely mitigate the crime.

This, we have no doubt, is the law. If a man is insane, he should not be punished at all; if he is not insane, he must be punished as the law directs. The mental capacity, whether strong or weak, does not affect the question of punishment, for if an accused is of unsound mind within the meaning of the law there can be no punishment. If once his mental incapacity is satisfactorily made to appear, he must go acquit; but if he is not of unsound mind, within the meaning of the law, he is criminally responsible, and must answer to the law for his crime.

It is a familiar rule that language employed by a court in its opinion is to be interpreted by the facts of the case in which the opinion is delivered, and, under this well established rule, the language employed in the case under immediate mention must be held to apply to the case then before the court, and to that case it was well and strongly applied. As there was there no question as to what constitutes criminal responsibility, there was no decision of that question. All that was there decided was, that where there is mental incapacity within the meaning of the law, it does not merely mitigate the offence, but constitutes a complete defence. This is undoubtedly the law, for where there is mental capacity within the meaning of the law, there is criminal responsibility; but where there is no such mental capacity, there is an entire exemption from criminal responsibility. This is all that was decided in the case referred to, for in that case there was no question calling for a decision other than that which was

made.    But here the question is, was there mental incapacity within the meaning of the law, and an essentially different rule governs the case.    Lawson Insanity as a Defence to Crime, p. 218 to p. 270, inclusive.

The evidence fully sustains the verdict.

We find no error in the record, and it is our duty to affirm the judgment, and it is, therefore, adjudged that the judgment be affirmed.

Filed March 6, 1888.