**Anthony THOMPSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 03A01–0610–CR–430.**

Court of Appeals of Indiana.

Oct. 26, 2007.

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

Anthony Thompson (Thompson) challenges the sentencing procedures followed by the sentencing court in imposing his aggregate sentence of sixty-three years for multiple sexual offenses perpetrated upon the fifteen-year-old victim. He also challenges the sentences themselves.

It is clear from the chronology of events in this case that the principles enunciated in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) are applicable and are to be incorporated in our appellate review. The State readily agrees.

It is further apparent that the matters here involved took place prior to April 25, 2005, when the General Assembly implemented a new sentencing scheme in Indiana. Accordingly, the sentencing scheme in place previously, dealing with presumptive as opposed to advisory sentences, is applicable to our case. *Weaver v. State*, 845 N.E.2d 1066 (Ind.Ct.App. 2006), *trans. denied;* see *Hightower v. State*, 866 N.E.2d 356 (Ind.Ct.App.2007), *trans. denied.*

In imposing the various enhanced and consecutive sentences here, the court found three aggravating circumstances:

(1) Defendant's criminal history and juvenile delinquency adjudications; (2) Defendant's probation status and number of probation revocations; and (3) Defendant's probation status at the time of these offenses. The court found no mitigating circumstances.

■ As stated in *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005), in applying the *Blakely* holding:

A trial court ... may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of a prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial factfinding.

Thompson contends that the sentencing court here based the sentences imposed upon facts other than as noted in *Trusley* and therefore violated *Blakely*.[1]

He argues variously:

I.   Prosecutorial misconduct occurred when the prosecutor encouraged the court to consider many different factors outside the scope of the limitations of *Blakely*.[2]

II.  The sentencing court erroneously utilized many of the improper factors invited by the prosecutor.

III. The enhanced and consecutive sentences were inappropriate and should be revised pursuant to Appellate Rule 7(B).

---

**1.** Thompson acknowledges that although the *Blakely* proscriptions apply to a sentence which is enhanced beyond the presumptive sentence, *Blakely* considerations are not implicated with regard to consecutive sentences. See *Cowens v. State*, 817 N.E.2d 255 (Ind.Ct. App.2004), *trans. denied.*

**2.** Thompson did not object to any statements or representations by the prosecutor during the sentencing argument. He necessarily, therefore, claims that such comments constituted fundamental error.

IV. The court erred in finding Thompson to be a sexually violent predator.

## I. and II.

■ In response to arguments I and II, the State asserts that the sentencing court did not violate *Blakely* in imposing the sentences. In this regard, the State emphasizes that the court specifically referred to only three aggravators and that each of these were appropriate considerations.

The subtle difference in the positions of the parties appears to be whether the particularized factors proffered by the prosecutor's argument were independent factors or were derivative of his criminal record, his prior probation violations or his current probationary status. If derivative, there would be no basis for reversal. See *Morgan v. State*, 829 N.E.2d 12 (Ind.2005)

Thompson argues that although the State permissibly alluded to the pre-sentence investigation report, the prosecutor went beyond the information in the report and embellished upon it. Thompson concedes that a court may utilize a pre-sentence report in determining criminal history and probation status. *Ryle v. State*, 842 N.E.2d 320 (Ind.2005), *cert. denied,* —— U.S. ——, 127 S.Ct. 90, 166 L.Ed.2d 63 (2006). He maintains, however, that the State may not go beyond the reliable information contained in the report and that in the case before us, the prosecutor did so.

For example, Thompson points to the prosecutor's reference to a 1999 admission by Thompson to Criminal Mischief and Criminal Recklessness. That reference included a somewhat editorial comment that: "This is the big car theft situation that resulted in Forty Thousand Dollars in damage." (Tr. 1080).[3]

Another example is that the prosecutor asserted that in 2000, two days after having been terminated from a Job corps placement in lieu of probation, Thompson "attempted to set fire to his own family's home." (Tr. at 1081). In point of fact, the attempted arson offense was directed to three vehicles in the driveway, not the home structure.

Yet another incident complained of is that the prosecutor referred to a 2002 charge of arson involving a bed which was set on fire, apparently by Thompson's cigarettes, and a fire in a bathroom trashcan. Thompson's quibble is with the State's characterization as "setting fire to the home he was living in." (Tr. at 1081). In essence, Thompson is claiming that there was no showing that the situation was other than as stated in his own recital of the matter, i.e. mere negligence or an "accident."

Thompson also asserts that the prosecutor went beyond the bounds of permissible argument when she said, "This is a man, a young man, who when he's frustrated, he lashes out and not in a small way, but in a major way. A way that risks the life and wellbeing of other people." (Tr. at 1081).

We have carefully considered each and all of the assertions of prosecutorial misconduct in the sentencing hearing argument and find no reasonable basis for holding such references to be matters of

---

**3.** The pre-sentence report contains a factual assertion that restitution was ordered. However, although Auto Theft was charged there was no adjudication upon that count of the Juvenile petition. A handwritten notation initialed by the trial court judge reflected the names of the victims of automobile damage in the amount of $40,000. This information may or may not have been obtained from the prosecutor at the time of sentencing or from the juvenile record itself.

such gravity and prejudice as to rise to the level of fundamental error.

It is to be noted that these alleged transgressions occurred during argument to the court, not by way of presentation of evidence. Arguments and comments of counsel are not evidence. *Nevel v. State,* 818 N.E.2d 1 (Ind.Ct.App.2004). The comments were not before the jury and could not have influenced the verdicts in any way. The comments were made to the sentencing judge who is presumed to base his sentencing determination solely upon proper factors rather than the prosecutor's or defense counsel's adversarial positions. *McElroy v. State,* 865 N.E.2d 584 (Ind. 2007) (sentencing determinations are within the trial court's discretion); *Rowe v. State,* 867 N.E.2d 262 (Ind.Ct.App.2007) (sentencing discretion will not be reversed absent a showing of manifest abuse); *Shockley v. State,* 89 Ind.App. 677, 166 N.E. 676 (1929) (sentencing judge understands the law and will not be biased in the discharge of his duty by statement of prosecuting attorney).

We conclude that there is no basis for reversal based upon the alleged invitation by the prosecutor for the sentencing court to rely upon inappropriate factors precluded by *Blakely* principles.

### III.

■ Thompson asks us to revise the sentences imposed under our authority pursuant to Appellate Rule 7(B). In doing so he argues that the enhanced sentences, plus having some of those sentences to be served consecutively, are inappropriate given the nature of the offenses and the character of the defendant.

We hereby adopt the argument set forth by the State in its brief:

Defendant's sentence here included sexually violating a fifteen-year-old girl, the sister of his girlfriend, after the family had invited Defendant to live in their home. Defendant secured her mouth and arms with duct tape and physically removed her from her home during the early morning hours and took her to a dirty, ransacked abandoned home, where he continued his sexual conquest. Defendant left her there alone, still bound by duct tape and a cloth rope, after threatening to kill her if she told anyone. [The victim] was left to fashion her own escape and seek help from a stranger . . . .

(Appellee's Brief at 12).

Given Thompson's extensive juvenile record of criminal offenses if committed by an adult and his extensive history of failing to honor his various periods of probation, we also conclude that the sentences are appropriate to his own character.

### IV.

■ Thompson challenges the trial court's finding that Thompson is a sexually violent predator.

The instant offenses were committed February 2, 2005, but Thompson was not sentenced until September 25, 2006. During the interim, the General Assembly, effective July 1, 2006, amended the statute concerning a determination that a person is a sexually violent predator. At the time these offenses were committed, the statute then in effect (I.C. 5–2–12–4.5), as does the amended statute (I.C. 35–38–1–7.5), defined a sexually violent predator as a person "who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly engage in any . . . . offenses [enumerated in I.C. 11–8–8–5]."[4]

---

4. At the time Thompson committed his

crimes, Ind.Code § 35–38–1–7.5 referenced

Four of the five offenses of which Thompson was convicted, two counts of criminal deviate conduct, sexual misconduct with a minor, and criminal confinement, are within the provisions of Ind. Code § 11–8–8–5. Thus, under the previous statute, Thompson would be appropriately subject to a sexually violent predator determination and under Ind.Code § 5–2–12–5 would be required to register as a "sexual and violent offender." The same analysis applies with respect to the statute in effect at the time of Thompson's sentencing. In other words, because Thompson was being sentenced to one or more of the offenses set forth in Ind.Code § 11–8–8–5 and for which he would be required to register with local law enforcement authority, he was subject to being determined as a sexually violent predator pursuant to the prior statute in effect in 2005 as well as pursuant to Ind.Code § 35–38–1–7.5. As discussed in footnote 4, supra, we discern no substantive difference between the prior statutes and the statutes applicable to this case with respect to the impact upon the determination of Thompson's status as a sexually violent predator.[5]

Thompson observes that the trial court clearly followed the new statute rather than the prior provision. In doing so, Thompson presupposes that by utilizing

the services of two qualified medical experts to assist in the determination, the trial court did not find that Thompson has committed an offense under sub-paragraph (b), which includes the crime of deviate criminal conduct.[6] We would note that by order dated July 15, 2006, the trial court referenced the jury verdicts and took under advisement "the judgment of conviction," ordered a pre-sentence investigation report, and in addition ordered that Thompson "be evaluated to determine if he is a sexual violent predator." (App. at 289). We construe this state of the record to reflect that the trial court with or without regard to what judgment or judgments of conviction might be entered and without regard to the statutory dictates of Ind. Code § 35–38–1–7.5, wished to have the benefit of expert opinion on the matter. Thompson concedes that this procedure comported with the process in use prior to the 2006 statutory amendment. (Appellant's Brief at 46).

Thompson's appellate position then seems to focus upon the fact that the two experts disagreed as to whether Thompson was likely to repeatedly engage in the prohibited sexual behavior. He notes that the trial court explicitly referred to the current statute in stating that the court

Ind.Code § 5–2–12–4 which enumerated the various crimes for which a person was deemed a "sex and violent offender." With the 2006 amendment, the qualifying crimes for which a defendant could be determined a sexually violent predator were referenced by citation to Ind.Code § 11–8–8–5. We discern no pertinent difference with regard to the substantive crimes enumerated in the former statute and in the statute applicable to this case. Effective July 1, 2007, the General Assembly made some modifications to Ind.Code 11–8–8. See P.L. 216–2007 §§ 9–15.

**5.** A meritorious argument could be made that if there were material differences between the earlier statute and that in place at the time of sentencing, the earlier provision should pre-

vail. This is because it was the commission of the instant crimes of February 2, 2005 which triggered the inquiry into whether Thompson was a sexually violent predator. Accordingly it would be singularly appropriate to look to the statutes in effect at the time of the commission of the crimes in order to determine his sexually violent predator status.

**6.** The statute provides that if the trial court does not find that the defendant is a sexually violent predator under subsection (b) the court "shall consult with a board of experts consisting of two (2) board certified psychologist or psychiatrists ... to determine if the person is a sexually violent predator."

"will make the finding regardless of what the two doctors stated" (Tr. 1085) and that Thompson was subject to a lifetime registration as a sexually violent predator rather than merely a ten-year period of registration for a sex offender. Ind.Code § 11–8–8–19.[7] The implication is that the court disregarded the opinions of the experts and that therefore it was necessarily following the new rather than the old statute in exercising its sole discretion.

■ Thompson argues that the lifetime registration impact by reason of the trial court's determination is violative of ex post facto principles. We disagree.

Insofar as the actual determination made that Thompson is a sexually violent predator, we discern no difference between the prior statutory scheme and the scheme allegedly employed by the sentencing court. Accordingly, we do not conclude that ex post facto considerations are implicated in that determination.

Quite a different question is presented by Thompson's challenge to the lifetime registration aspect of the trial court's order. The statute formerly in place, Ind. Code § 5–2–12–13, provided that the duty of a sex and violent offender to register terminated after ten years unless the individual had been determined to be a sexually violent predator, in which case the registration requirement was for an "indefinite period." This proviso was subject to an exception if a court "assisted by a board of experts finds that the sex and violent offender is no longer a sexually violent predator. . . ."

The amended statute currently in place, Ind.Code § 11–8–8–19, contains a change. It provides for a ten-year registration period for a sex or violent offender unless that person has been determined to be a sexually violent predator, in which case he must register "for life."[8] The change from a registration requirement for "an indefinite period subject to termination if the individual was found to be no longer a sexually violent predator" to an unequivocal and absolute requirement of registration for life is not an inconsequential change. This conclusion leads us to a consideration of Thompson's claim of an ex post facto violation.

We first observe that although the statutory provision for determination that a person is a sexually violent predator (Ind. Code § 35–38–1–7.5) is placed within the criminal code, the provision for registration and the duration of the registration period is within the statutory code provisions dealing with the Department of Correction. This factor of placement within the Indiana Code does not provide us with a vehicle for stating with certitude that the provision is clearly not penal in nature but rather is purely regulatory. The lifetime registration impact of the trial court's sexually violent predator determination most assuredly has penal implications. See *Goldsberry v. State*, 821 N.E.2d 447 (Ind. Ct.App.2005); but see *Spencer v. O'Connor*, 707 N.E.2d 1039 (Ind.Ct.App.1999), *trans. denied.*[9]

---

**7.** Effective July 1, 2007, certain changes were made to the registration requirement so that it was applicable not only to "sex offenders" but to "a sex or violent offender" and to a sex or violent offender who was also determined to be a "sexually violent predator." *See* e.g., P.L. 216–2007 § 15. These changes have no import with regard to this case.

**8.** Changes made by P.L. 216–2007 § 27 did not change the provisions in this regard.

**9.** In *Spencer*, this court pointed to the fact that the period of registration was only for ten years and that therefore was an "intent to monitor the whereabouts of the offender, not to punish the offender." 707 N.E.2d at 1043. As earlier noted, a requirement for lifetime

In keeping with the tenor of the *Goldsberry* decision, we hold that imposition of a lifetime registration requirement runs afoul of ex post facto considerations. Accordingly, we affirm the convictions and the sentences imposed but reverse the sexually violent predator determination insofar as it requires Thompson to register for life. We remand with instructions to amend the registration requirement to be for an indefinite period subject to the right of Thompson to seek a determination at some time in the future that he is no longer a sexually violent predator.

Affirmed in part and reversed in part and remanded.

BAKER, C.J., and MAY, J., concur.

registration is decidedly different than a finite period of ten years.